All right, our final case for today, this morning, barely, is United States v. Newton, No. 212514. Mr. Meyer. Thank you, Judge. Good morning. May it please the Court, Jeffrey Meyer from the Federal Defender Program on behalf of Appellant David Newton. Between the time that Mr. Newton's motion for a compassionate release was fully briefed in the District Court and the date on which the District Court denied that motion for a second time after this Court's original remand in the case, there were two intervening changes that profoundly affected the way District Courts analyzed compassionate release motions brought on the premise that the COVID-19 pandemic placed people in the Bureau of Prisons at heightened danger. The first change was factual. Vaccines became widely available for the general population in the United States and eventually made their way into the Bureau of Prisons and became available to prisoners. The second related change was legal. This Court issued its opinions in Broadfield and UGBA and announced to the District Courts that when evaluating motions for compassionate release based on the COVID-19 pandemic, because of the existence of vaccines, it would be an abuse of discretion for a District Court to find that the pandemic comprised the extraordinary and compelling circumstances necessary to support a motion for compassionate release. But those cases did, as I believe you've argued in your briefs here, they left a door open a crack, you know, for somebody who wanted to try to say, I'm not one of those people who can benefit from a vaccine. And, you know, off the record, Googling and so on, suggests that there are some people, immunocompromised people, for instance, who don't get the same benefit from a vaccine. And indeed, the data I saw from one study from CDC suggests that maybe three percent of vaccinated people actually die from the disease. Anyway, what I'm wondering, though, is whether Mr. Newton, in any way, you know, not at this Court, in any way proffered anything to the District Court to suggest that perhaps he fell in that small category of people that Broadfield left the door open for. That's precisely correct, Judge, and I think you've hit on the issue in this case. And the issue is that the District Court didn't allow Mr. Newton the opportunity to proffer or submit any of that evidence to the District Court. But is there any reason at this stage, I mean, couldn't he at least have, just the way you might in a 12B6 appeal, you know, couldn't he have said on appeal, I know the District Court acted very quickly, so I understand your point about that. But it is possible, you know, to ask a District Court to reconsider or to at least say, had we only been given the chance, this is what we would have wanted to explore, you know, or something. I just didn't see that. I guess, if I may add to that, you could have also said that here, but you didn't. I mean, there's nothing in our brief that says if he would have had the opportunity to argue that he couldn't have benefited from the vaccine or the booster, he would have said the following. And by the way, and one other thing, he could file another motion for compassionate release. It's not like he's out with prejudice and he can't ever go back to the District Court for the District Court to consider why he can't benefit from the vaccine or booster, which I understand, by the way, you concede he's been vaccinated and boosted, right? That's correct, Judge. He has received both doses of the vaccine and been boosted. I just want to make sure that I'm understanding the question clearly. We're talking about submitting something with our brief in this appeal as opposed to the previous appeal. Kind of proffering almost. I mean, not, if, here's what we could have shown. He has MS, you know, or he has lupus or, you know, something, you know, there's a reason to think that his immune system doesn't respond to these vaccination measures the way that of a healthy person would. Right. Well, so to put it out there, you know, we cited a study in the reply brief that says that based on his prolonged use of corticosteroids, that he may be immunocompromised. It's our view that this is such a detailed factual question, as these have been all along in the District Courts, that the District Court is the appropriate place for that sort of fact finding to occur. And he didn't have an opportunity to do that in the District Court. I understand, Judge Kirsch, your point about the fact that he's not precluded from bringing another motion, but if you look at the timeline here, the issue really here is that there was an error. That there had been an intervening change in the law and the District Court. But, but, you see, what, what's the error? That's the problem. What do we tell District Court judges? When there's a motion that's filed like this, they need to monitor the ECF docket and then there's an intervening change in the law. They have to provide a defendant a certain amount of time to respond. This happens, by the way, where, I mean, this happens in other contexts, too, where we might issue an opinion and the District Court judge issues an order that same day or, or the next day and doesn't consider the opinion. Sometimes the District Judge's order is reversed and sometimes it's not. Had there not been such a profound change in the way that these, these motions were filed, the District Judge could have, based on the information she had. What about the record? I mean, she, she, she decides this remanded case. I mean, of course, there's been one round. And she doesn't get an update on Mr. Newton's medical records. Now, maybe that wouldn't have helped him, you know, if, if she had seen from the update, oh, indeed, he has been vaccinated and, and, you know, I'm, I'm not as concerned. But is there some rule of law that says when a District Court gets one of these kinds of things on remand, you've got to make sure that you've got the up-to-date medical records and, you know, take 10 minutes to scan through the, through the law? I don't believe there's anything directly on point, Judge, but it, we have to remember that at the time the District Court got the case on remand, she was relying on submissions that had been made nearly a year previously. Right. I mean, it's a stale record, actually. It's very stale, particularly in the context of the pandemic, which seems to change at a lightning pace. And, you know, what we're, what we're asking for at bottom here is, is the opportunity to, to present this evidence to the District Court. To present what evidence? To present evidence of, for instance, the CDC study that we cited in the reply brief, the updated medical records, which the District Court did not have, and which would need to be updated again at this point. Those are things that the District Court should have considered based on the profound change that had occurred in the way District Courts were, were analyzing these cases. And that takes me back to what worries me. I, at the moment, anyway, without envisioning the appointment of, of a physician who was going to examine Mr. Newton, I don't see any reason to think that he is in that small, whatever it is, two, 3% of people who, regrettably for them, of course, you know, don't get the benefit from the, from the vaccination that Broadfield assumed that most people do get. Well, but again, we're, we're working with this, a sort of stale record at this point as well. And, and the issue really is one of fundamental fairness. It's not just that the District Court didn't give Mr. Newton the opportunity to address this. The District Court actually penalized him for not addressing this, for not addressing in those older motions and the older briefings. Cases that hadn't come out yet. Cases that hadn't come out yet, or vaccines that didn't exist yet. And, and there is something fundamentally unfair about that. So we're just asking for Mr. Newton to have the opportunity to address this in the District Court. And with that, I'll save the remainder of my time for rebuttal. I think that would be fine. Ms. Bonamici. May it please the Court, Deborah Bonamici on behalf of the United States. Good afternoon. The District Court acted in accordance with the Court's remand order and within its broad discretion in applying this Court's intervening precedent to decide that Mr. Newton had not established a extraordinary and compelling reason for considering a sentence reduction as case under Section 3582C. But you know, it really seems quite unfair for the District Court to scold Mr. Newton for not briefing cases that hadn't come down yet and for, you know, not talking about things like the vaccines in his original motion that were maybe on the way, but, but hadn't come down yet. You know, it's, I'm troubled by, by this because of the fact that although vaccines are amazing and they have saved countless lives, they don't work for everybody. And I don't read Broadfield myself as just hard and fast. Vaccines are always good as a matter of law. The Court was careful in Broadfield to say, if you're not one of those people who can benefit, then you need to speak up. But if, if that's true, then you need an opportunity under 6A1.3 or, you know, under something, not even sure you have to go all the way out to the Due Process Clause, you need an opportunity to be heard. Well, three, three responses to that. The first one is that in this case, there was, you're right, he was never asked the question, can he benefit from a vaccine? Yeah, two days to, you know, from the time the District Court gets the mandate. I don't think that's quite, I don't think that number is quite right, but regardless of that, it's a short period of time. We don't need to quibble about that. But even though the vaccines were not available during Newton's, during the process or the proceedings on this original motion, they were, as, as, as I think Judge Hershen and perhaps Judge Hamilton have pointed out, there've been a number of opportunities between now and then, or then and now for him to have proffered something to indicate that he is in that category. And at the time the court made his decision, he had not done so. Right, you're right. It's about, it's about four weeks, July 19 to August 10. Yeah, I mean, I, I share a lot of the procedural concerns here. This strikes me as an extremely high risk procedure, a high risk of reversal for a District Court. But I'm, I'm, I'm still waiting for some indication of prejudice. So, so. That's true. So there's no indication in the record, despite the fact that, that time had elapsed and there were, there was time to be discussing something about vaccines at some point, proffering some information, that never happened. Second point I'd make is that Broadfield and Ugba themselves were exactly in this same posture when they decided to partly on the basis that the defendant had never contended that he could not benefit from a vaccine. Those cases both made clear that the original proceedings took place before vaccines were available. So there's no, there really is no reason for the District Court to, to discern from those cases that if there was some sort of requirement that the proceedings be reopened to, to receive additional evidence on that point. I'm just concerned that the District Judge, and maybe this is partly our fault, you know, have been to a degree over-reading, you know, Broadfield and Ugba as some pronouncement from on high for us that, of the sort that maybe the CDC ought to be making. You know, we are not qualified to say, you know, that vaccines are always in a hundred percent of the time, a hundred percent effective. And Broadfield, as I read it, was careful to set, to leave some room for the unusual case, one hopes very unusual, but the unusual case where you're getting a vaccine, maybe you're a cancer patient, maybe you've had a liver transplant and your whole immune system is suppressed. There are people in that condition. That's true. The number is small, but that is absolutely true. And I think the court recognized that when, when the court specifically found that the record contained no evidence suggesting that the defendant was in that category. And to date, there have been no proffers of any evidence suggesting that that's the case. And the evidence actually seems to point the other direction, that evidence, including the fact that the defendant is fully vaccinated and boosted. But the third thing I would say is something that Judge Kirsch has already brought up, which is there are other opportunities. This isn't a case where there's this great chance of prejudice to the defendant when the defendant is free to bring a second motion based on new evidence, new arguments that have, that arise. Well, that's absolutely true. Although I think it's something that from an institutional point of view, we want to be careful about because if, if it should have been wrapped up in this proceeding, we don't want to adopt, you know, a wasteful, let's have successive successive proceedings. We would like to make sure it gets done right the first time. I think that's right. But I think that it would be a shift here to suggest that the district court may be precisely in these specific types of cases, but certainly would not want to suggest a rule for all cases of the district court must reopen the evidence and arguments in every case that's remanded for reconsideration based on not a failure to allow the defendant an opportunity to present evidence, but rather a failure of the, by the district court to adequately consider the arguments he already did make. The defendant here didn't have, the district judge didn't preclude the defendant from filing anything. No, but the court ruled. She just didn't invite it. She didn't invite responses of any kind. That's right. That's true. And, and ruled without that. But as you pointed out, Judge Kerr, the defendant could have always, or I think Judge Wood pointed this out initially, that the defendant easily could have filed a motion for reconsideration rather than proceeding directly to appeal. That of course was his choice. I'm not trying to suggest otherwise, but that is something that would have solved the problem and obviated the need for this appeal. Could he have also just procedurally, so I understand in a motion for compassionate release, he first has to go to the warden, right? And he has to wait 30 days. And if the warden denies him compassionate release, he can then go to the court. Is that, are those still the rules? Those, those are the rules, but there's, there's sometimes, many times, lots of times in this area, the court has construed a second motion as a motion for reconsideration when the very same arguments are being considered. Oh, I see. And it's really just a supplemental filing. So he wouldn't have to go back to the warden is the idea. He would file a supplemental motion for reconsideration of his motion denying the, denying the motion for compassionate release and say, look, I don't, the vaccine doesn't help me under Broadfield NAGPA. Within two weeks, he could have filed a motion for reconsideration and, and it would have been a motion for reconsideration. He could have presented that evidence. But he couldn't anymore unless it was something, I mean, there isn't a 60B. Correct. Correct. What I was talking about, what, what I think that we were talking about was the need to exhaust administrative remedies. Right. And as far as the exhaustion goes, what I'm saying is that there have been, there've been a number of cases where courts have viewed a successive motion that, that is really just presenting additional evidence on the same argument as having qualified, having given, given the defendant credit for having exhausted previously rather than requesting, demanding that he go back. Outside of that two week window. Yeah. Oh, yeah. Months later, months later. Sometimes, for example, here's a situation that has occurred. Sometimes second motions have been filed where there's a new outbreak. That that was a pretty common thing and it's a new outbreak. It's all the same point and, and judges have just allowed them, not required a separate exhaustion for that. If it's a new argument, I mean, first of all, this court has issued an opinion on that. A new argument has to be supported by a separate administrative request. So if it's a, if it's better looked at as a new argument, then it would require separate exhaustion. And if it's seen as supplemental evidence, then it would not. That, that's basically what's been happening down there. But this is a case, it seems to me, that, I mean, I recognize that it was quickly, it quickly followed the heels of Broadfield. But Broadfield itself fully supported the district court's analysis here, including the analysis that there had, there's nothing in the record here to demonstrate that, that this defendant falls within that narrow category. Right. It's just that he didn't know it was his burden to come forward with that over this quick period of time. And I would just say neither did Broadfield or UGBA or a number of other cases which this court has done. And here, there really isn't, even though these, the circumstances in compassionate release cases based on COVID do, you know, the circumstances have changed over time. There has been a situation, there could be, this could be seen as something where requiring a fresh or a fresh set of medical records or whatever might be useful. But the reality is in taking this part of, this gigantic oversized part of the compassionate release world out, requiring a fresh record for every compassionate release case that's denied on grounds that were based on intervening case law would be, it just wouldn't be warranted under the circumstances. I can see the pull here, but particularly given that the defendant had another option back then and still has to get another option now, there's just really no reason to add that on when typically a district court on remand for reconsideration in this context would not be expected to and would not reopen the record for new evidence and arguments. And that's the rule that makes sense here, I think. Okay. Thank you very much. We would ask that the court affirm. All right. Anything further? Yes. Thank you, Judge. I can't speak to every district court, but I do share your suspicions that it is possible that many district courts are misreading Broadfield and UGPA as a hard stop to compassionate release motions. But putting aside what most courts are doing, I think the issue in this specific case is the way in which the district court penalized Mr. Newton for not addressing these things that didn't exist at the time the briefs were filed, but also not allowing him or inviting him to submit new briefing on the subject. I did just briefly want to also address Judge Hamilton's concern about the prejudice. There is evidence in the original record of the use of immunosuppressant drugs over a prolonged period of time in order to treat Mr. Newton's longstanding asthma and then some secondary conditions that arose because of his asthma. I think that's the prejudice, is that there is a colorable claim here that he falls within the exception presented in Broadfield and UGPA, and he was never given the opportunity to explore that. This isn't quite the same procedural posture as Broadfield and UGPA. This case was on remand when those decisions came down. So similar to United States v. Hagenau, there was a fairly profound intervening change in law that he was not given the opportunity to address. Hagenau, of course, benefited the government, but it's our belief that that principle should apply equally to both sides. And so we would ask this court to vacate the district court's judgment and remand. All right. Thank you very much, Mr. Meyer. Thank you, Ms. Bodemici. The court will take the case under advisement, and we will be in recess.